UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
ex rel. JENNIFER SILVA
and JESSICA ROBERTSON,

    Plaintiffs,

v.                     Case No. 8:15-cv-444-T-33TGW

VICI MARKETING, LLC; VICI
MARKETING GROUP, LLC; Z STAT
MEDICAL, LLC; STAT DIRECT, LLC;
MEDVEST LLC; SCOTT ROIX;
and LARRY SMITH,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Larry Smith, Stat Direct, LLC, and Z Stat Medical, LLC's Motion to Stay (Doc. # 77), filed on December 24, 2018. The United States of America responded in opposition on January 25, 2019. (Doc. # 85). As set forth below, the Motion is denied.

I. **Background**

Relators Jennifer Silva and Jessica Robertson initiated this False Claims Act (FCA) action under seal in March of 2015. (Doc. # 1). On August 10, 2018, the United States elected to intervene as to the claims against Defendants VICI

1

Marketing, LLC, VICI Marketing Group, LLC, Scott Roix, Z Stat Medical, Stat Direct, and Smith, and subsequently filed a Complaint in partial intervention. (Doc. ## 24, 39). The United States has settled its claims against Roix and the VICI Defendants. (Doc. # 38).

The United States is now pursuing its claims against Smith, Z Stat Medical, and Stat Direct only. The United States alleges that these Defendants engaged in two kickback schemes from September 2014 to February 2015, in which they paid marketers — including companies controlled by Roix — commissions based on the number and value of prescriptions that were referred to Z Stat Medical. (Doc. # 39 at 2).

In addition to being a defendant in this case, Smith is a defendant in a pending criminal case in another federal district court. As the Motion explains, "[o]n October 9, 2018, a little over a week before the Government filed its Complaint in Intervention, [] Smith, and others, were indicted in the Eastern District of Tennessee for conspiracy to commit health care fraud, mail fraud, and introduction of misbranded drugs into interstate commerce with intent to defraud and mislead." (Doc. # 77 at 4).

The criminal case concerns two schemes that occurred between June 2015 and April 2018. (Doc. # 77-1 at 1, 15). The

2

first involves Smith on behalf of three pharmacies he allegedly controlled — Alpha-Omega Pharmacy, LLC, Germaine Pharmacy Inc., and Zoetic Pharmacy — purchasing "prescriptions for 'inflated' average whole sale prices" from Roix and a telemedicine company Roix controlled, HealthRight LLC. (Doc. # 77 at 4). These prescriptions were sent to the three pharmacies, and Smith and Roix were allegedly able to fraudulently obtain over $24 million through the scheme. (Id. at 4-5). In the second scheme, Smith and another company owned and controlled by Smith, Tanith Enterprises LLC, "paid kickbacks amounting to approximately $3.55 million to HealthRight and caused ULD Wholesale — another company owned and controlled by [] Smith — to pay approximately $1.6 million in kickbacks to [] Roix for such prescriptions." (Id. at 5).

Smith, Z Stat Medical, and Stat Direct move to stay this case pending resolution of Smith's criminal charges. (Id.). The United States has responded, (Doc. # 85), and Relators have also filed a response, (Doc. # 87). The Motion is ripe for review.

## II. Discussion

"A court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.'"

3

United States v. Lot 5, Fox Grove, Alachua Cty., 23 F.3d 359, 364 (11th Cir. 1994)(citing United States v. Kordel, 397 U.S. 1, 12-13 & n.27 (1970)). "The [F]ifth [A]mendment privilege against self-incrimination permits a person 'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in the future criminal proceedings.'" Erwin v. Price, 778 F.2d 668, 669 (11th Cir. 1985)(quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).

"However, the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." S.E.C. v. Wright, 261 F. App'x 259, 262-63 (11th Cir. 2008). To "trigger [the exception for 'special circumstances'], the invocation of the [Fifth Amendment] privilege must result in an adverse judgment, not merely the loss of '[the] most effective defense.' Stated plainly, the rule applies when the invocation of the privilege would result in 'automatic entry of summary judgment.'" United States v. Premises Located at Route 13, 946 F.2d 749, 756 (11th Cir. 1991).

In determining whether special circumstances exist, the Court looks to:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

Investments v. Rothstein, No. 10-60786-Civ, 2011 WL 2530945, at *1 (S.D. Fla. June 24, 2011)(quoting Yeomans v. Forster & Howell, Inc., No. 09-00488, 2009 WL 2960387, at *1 (M.D. Ala. Sept. 10, 2009)); see also Whitaker v. Miami-Dade Cty., No. 13-24450-CIV-LENARD/GOODMAN, 2014 WL 12513590, at *2-5 (S.D. Fla. Apr. 23, 2014)(declining to stay § 1983 case pending criminal investigation of officers after analyzing the six factors).

Here, it is undisputed Smith has actually been indicted and the criminal charges are currently pending in Tennessee. Therefore, the second factor — the status of the case — weighs in favor of a stay.

Concerning the first factor, Smith, Z Stat Medical, and Stat Direct argue that the issues in the civil and criminal proceedings greatly overlap, weighing in favor of a stay. (Doc. # 77 at 7). According to them, "[t]he primary wrongful conduct alleged in both the criminal and civil cases is that

5

[] Smith and [] Roix engaged in schemes using different companies to submit false claims for payment and to provide kickbacks to induce prescriptions for drugs that were not needed and/or where no practitioner-patient relationship was established." (Id.). In fact, "Roix has entered into a global settlement with the Government encompassing both cases and is expected to cooperate and testify in the criminal and the civil proceedings." (Id.).

The United States disagrees that there is substantial overlap between the cases. As the United States notes, the schemes alleged in the criminal indictment took place at a different time — from June 2015 to April 2018 — than the schemes involved in the civil case — late 2014 to February 2015. (Doc. # 85 at 7; Doc. # 77-1 at 1, 15). Additionally, the schemes alleged in the criminal case involve different companies owned and controlled by Smith than those at issue in the civil case. (Doc. # 85 at 8). As the United States succinctly put it, "[t]he kickback arrangements at issue in the Complaint are simply not part of the criminal indictment." (Id.).

The Court agrees with the United States that there is not a substantial similarity between the civil and criminal cases because they involve different schemes that took place

6

at different times and were committed using different pharmacies controlled by Smith. "[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." Love v. City of Lanett, No. 3:09-cv-622-MEF, 2009 WL 2525371, at *2 (M.D. Ala. Aug. 17, 2009)(quoting Dominguez v. Hartford Fin. Servs., 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008)). Because there is insufficient similarity between the cases, this factor weighs heavily against a stay.

Next, Smith, Z Stat Medical, and Stat Direct emphasize that Smith would invoke his Fifth Amendment right against self-incrimination in this action because of the overlap with the criminal case. (Doc. # 77 at 7). According to them, "Smith's invocation of the Fifth Amendment right against self-incrimination would likely compel an adverse judgment against the Defendants." (Id. at 8). They insist that "Smith is the only witness who can testify regarding his knowledge and intent in defense against the Government's allegations that the Defendants knowingly presented or caused to be presented a false or fraudulent claim for payment or approval in violation of the FCA." (Id.).

7

The United States disagrees that Smith's invocation of his Fifth Amendment rights would result in entry of summary judgment against him. (Doc. # 85 at 11-13). True, invocation of his Fifth Amendment privilege against self-incrimination would prevent Smith himself from testifying to his knowledge and intent. But Defendants have not explained why other employees of Z Stat Medical or its marketing partners could not testify as to their and Smith's knowledge and intent when they entered into the alleged kickback agreements. (Id. at 12); see Mitchell v. Hunt, No. 8:15-cv-2603-T-23TGW, 2016 WL 7396670, at *1 (M.D. Fla. Feb. 10, 2016)(denying motion to stay in civil case with parallel criminal proceedings where "the motion fail[ed] to explain why the defendants cannot rely on other testimony or evidence" if they invoked their privilege against self-incrimination).

Additionally, the United States correctly notes that knowledge is merely one element of the claim against Smith and the other Defendants. (Doc. # 85 at 12). Thus, even though Smith may lose an effective defense on the knowledge element, the United States still has to prove its case, including that "the claims were false, the failure to disclose the kickback scheme was material, [and] the Defendants knew or should have known that the claims submitted were not based on valid

8

doctor-patient relationships." (Id. at 13); see Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir. 1991)("The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production.").

The Court agrees with the United States that Smith's invocation of his Fifth Amendment rights would not result in an automatic entry of summary judgment against him. Therefore, this weighs against a stay.

Concerning prejudice, Smith insists the prejudice that Defendants would suffer if a stay was not granted far outweighs the prejudice the United States would suffer if a stay were granted. (Doc. # 77 at 10). True, Smith's having to defend himself simultaneously in the criminal and civil cases is a heavy burden. And his intended invocation of his Fifth Amendment rights weakens his defense in this case.

But the Court finds that the United States would also be prejudiced by a stay because it would "add[] additional time between the events in question that took place in late 2014 and early 2015, risking the loss of memory of other individuals, including other parties to the kickback arrangements and employees of the Defendants." (Doc. # 85 at 9); see Whitaker, 2014 WL 12513590, at *3 ("Plaintiffs'

9

concerns about witnesses' fading memories and the disappearance of evidence are legitimate concerns, particularly where, as here, the incident occurred over fifteen months ago."). Additionally, "the Court takes seriously [the United States'] right to proceed with [its] claims." Whitaker, 2014 WL 12513590, at *3. Thus, because both sides face prejudice, this factor is neutral.

Regarding the interest of the courts and the public interest, Smith insists a stay is in this Court's interest. (Doc. # 77 at 11). Smith notes that Roix already reached a resolution of both the criminal and civil cases with the United States and suggests that a global resolution of the civil and criminal charges against Smith could also be reached. (Id. at 11-12). So, Smith reasons, "a stay of this action would be the most efficient use of judicial resources" and be in the best interest of the public. (Id. at 12).

But the Court agrees with the United States that it is highly speculative whether the United States will reach a global resolution with Smith for the criminal and civil case. (Doc. # 85 at 10). And the United States correctly emphasizes this Court's "interest in moving cases forward and resolving the cases on its docket" and the public's interest "in determining whether the Defendants owe tens of millions of

dollars in damages and penalties to the United States." (Id. at 11). Thus, this factor also weighs against a stay.

Weighing all the factors, the Court determines that the circumstances of this case do not warrant a stay. Although the Court declines to stay the case, Smith raises reasonable concerns about the best way to handle discovery given the ongoing criminal proceedings. If it should become necessary, the parties may request a hearing before the Magistrate Judge to craft a discovery plan that takes into account Smith's pending criminal charges.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

Defendants Larry Smith, Stat Direct, LLC, and Z Stat Medical, LLC's Motion to Stay (Doc. # 77) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of February, 2019.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE