UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
ex rel. JENNIFER SILVA
and JESSICA ROBERTSON,

        Plaintiffs,

v.                                    Case No. 8:15-cv-444-T-33TGW


VICI MARKETING, LLC; VICI
MARKETING GROUP, LLC; Z STAT
MEDICAL, LLC; STAT DIRECT, LLC;
MEDVEST LLC; SCOTT ROIX;
and LARRY SMITH,

        Defendants.
_____/

## ORDER

        This matter comes before the Court upon consideration of

Defendants Larry Smith, Stat Direct, LLC, and Z Stat Medical,

LLC's Motion to Dismiss the United States of America's

Complaint in Intervention (Doc. # 76), filed on December 24,

2018. The United States responded on January 25, 2019. (Doc.

# 86). For the reasons that follow, the Motion is granted in

part and denied in part.

## I.   Background

        Relators Jennifer Silva and Jessica Robertson initiated

this False Claims Act (FCA) action under seal in March of

2015. (Doc. # 1). Relators' Complaint alleged that all

Defendants — VICI Marketing, LLC, VICI Marketing Group, LLC, Z Stat Medical, Stat Direct, Anthony Crowe, Vinson Di Santo, Jude Germain, Marjorie Lantum, Medvest LLC, Naveed Naeem, Scott Roix, and Smith — violated the FCA by "seeking payment at greatly inflated rates for lidocaine" and "submitting fraudulent claims for payment to government healthcare programs including Tricare, Medicare and Medicaid." (Id. at 1-2).

Three years later, on August 10, 2018, the United States elected to intervene for the claims against VICI Marketing, VICI Marketing Group, Roix, Z Stat Medical, Stat Direct, and Smith, and filed a Complaint in partial intervention. (Doc. ## 24, 39). The United States has settled its claims against Roix and the VICI Defendants. (Doc. # 38). The United States is now pursuing its claims against Smith, Z Stat Medical, and Stat Direct alone.

In its Complaint in partial intervention, the United States alleges that Smith, Z Stat Medical, and Stat Direct participated in two kickback schemes.

## A.   Centurion Scheme

First, the United States alleges that "from September 2014 to February 2015, [] Smith via [] Z Stat Medical . . . knowingly submitted and/or caused the submission of claims to

TRICARE for reimbursement for compounded drugs that were false or fraudulent because they were tainted by kickbacks to marketers." (Doc. # 39 at 2). Z Stat Medical, which does business as Oldsmar Pharmacy, "is a compounding pharmacy that was owned during the relevant time by [] Smith." (Id. at 9). Z Stat Medical "was registered as being managed by Stat Direct" and "advertised itself as the specialty compounding division of Stat Direct." (Id. at 3).

According to the Complaint in partial intervention, "[i]n November 2014, [Z Stat Medical] entered into a kickback arrangement with Centurion Compounding, Inc. [] under which [Z Stat Medical] and Centurion agreed to split the profits of TRICARE prescriptions in exchange for referrals." (Id. at 9). "Centurion . . . engage[d] sales representatives as independent contractors to market expensive compounded medications, specifically creams for pain and scars, among others, to beneficiaries of healthcare plans, especially TRICARE." (Id. at 10-11). "Centurion continued to direct [both] the patients that Centurion sales representatives had recruited and the physicians in their network to send all of their compounded cream prescriptions to Centurion, which then transmitted them to [Z Stat Medical] to fill." (Id.).

"Smith and other employees of [Z Stat Medical] negotiated with Anderson, co-owner of Centurion, the commission that [Z Stat Medical] would pay to Centurion per prescription that Centurion referred to [Z Stat Medical]." (Id. at 11). They ultimately agreed that Z Stat Medical would take fifteen percent of the profits off the top, and then the remaining eighty-five percent of the profits would be split 50-50 between Z Stat Medical and Centurion. (Id.).

Z Stat Medical and Centurion maintained "commission reports" — spreadsheets listing "all of the prescriptions generated by Centurion, the amounts received by [Z Stat Medical] for claims that the pharmacy submitted to the patients' insurance for reimbursement, and the amounts owed in commission, thereby documenting the kickback arrangement." (Id.). "[T]he commission report for December 1, 2014 through December 15, 2014 identified over $9,700,000 received by [Z Stat Medical] and over $3,500,000 in commissions owed to Centurion." (Id.).

"[T]he vast majority of prescriptions from federal beneficiaries were submitted to TRICARE." (Id.). From November 2014 to February 2015, Z Stat Medical submitted over 4,000 claims to TRICARE "for compounded prescriptions that Centurion arranged for [Z Stat Medical] to fill in exchange

for commissions on each prescription." (Id. at 12). "TRICARE paid approximately $18,000,000 for those prescriptions." (Id.).

During this kickback scheme, Z Stat Medical and Centurion "sought the assistance of attorneys to try to create a legally permissible arrangement whereby the relationship between Centurion and [Z Stat Medical] could continue and the individual marketers could be compensated on a commission basis." (Id.). Although they never reached such an arrangement, the kickbacks continued. (Id.).

In total, Z Stat Medical paid over $6,000,000 in commissions to Centurion from November 2014 to February 2015. (Id.). "Centurion then disbursed to its independent contractor sales representatives their share of the commissions for the prescriptions they generated." (Id.). "The only work the Centurion marketers performed in exchange for the commissions was to generate prescriptions that went to [Z Stat Medical]." (Id. at 13). Because the marketers were independent contractors, Z Stat Medical "did not control how the marketers generated the prescriptions that were sent to the pharmacy and did not supervise the marketers." (Id.). "Smith, President of [Z Stat Medical], knew that the money paid to Centurion was used to pay commissions to the

marketers, who were not employees of [Z Stat Medical] or Centurion." (Id. at 12).

"The United States executed a search warrant on [Z Stat Medical] and others on February 10, 2015. On February 13, 2015, [the Defense Health Agency] sent a letter to Smith suspending payments for present and future claims from [Z Stat Medical]." (Id. at 13).

### B. Roix Scheme

Smith and Z Stat Medical allegedly entered a separate kickback agreement with Roix, whereby Roix's companies would send prescriptions to Z Stat Medical. (Id.). "Companies associated with Roix, including Health Saving Solutions, would publish online advertisements offering free consultations for pain creams. Customers would call the number listed in the advertisement and speak with telemarketers at Vici Marketing, a call center company owned by Roix." (Id.).

Customers with insurance that would cover compounded medicines would be connected to a telemedicine company, and the doctor would prescribe compounded medications without seeing the customers. (Id. at 14). "The resulting prescription would go to one of Roix's companies, who would

then send the prescription to [Z Stat Medical] to fill."
(Id.).

"[Z Stat Medical] would submit a claim for reimbursement
to private payors and federal health care programs and then
include the amount of the reimbursement in the next commission
payment to Health Saving Solutions." (Id.). "The amount paid
by [Z Stat Medical] to Health Saving Solutions was
approximately 41 percent of the revenue for each
prescription." (Id.).

In September 2014, Smith — on behalf of his company
Direct Telemedicine Resources, Inc. — entered into an alleged
sham agreement with Roix on behalf of Health Saving Solutions.
(Id.). Under the agreement, "Smith's company agreed to
compensate Roix's company in the amount of $5.5 million for
services performed from September 1, 2014 to February 28,
2015," and the agreement stated this amount was not based on
the value of the business generated by Z Stat Medical. (Id.
at 15).

In fact, however, "[Z Stat Medical's] payments to Health
Saving Solutions were based on the value of business generated
by [Z Stat Medical]." (Id.). The parties violated other
provisions of the agreement as well, including that (i) the
parties would comply with federal laws (such as anti-kickback

laws) and refrain from soliciting any federal health care program beneficiaries, and (ii) Health Saving Solutions would provide monthly reports of its legal marketing efforts. (Id. at 15). "The parties to the agreement used a spreadsheet to keep track of prescriptions, the amount received for each prescription, and the commission owed to Health Saving Solutions per prescription." (Id. at 15-16).

"From September 2014 to February 2015, [Z Stat Medical] submitted approximately 700 prescriptions to TRICARE for compounded prescriptions that Health Saving Solutions arranged for [Z Stat Medical] to fill in exchange for a commission on each prescription." (Id. at 16). "TRICARE paid approximately $3.4 million for the prescriptions." (Id.).

"The only work Health Saving Solutions performed in exchange for the commissions was to generate reimbursable prescriptions for [Z Stat Medical] to fill." (Id.). Because they were independent contractors, "Health Saving Solutions and Vici Marketing were not given specific work assignments by [Z Stat Medical]," and Z Stat Medical "did not control how the companies generated the prescriptions that were sent to the pharmacy and did not supervise the marketers." (Id.).

## C.  **Additional Allegations**

"[Z Stat Medical], with the assistance of the marketing companies, rather than the prescribing doctors, designed the compounds to maximize profits on each prescription." (Id. at 17). "Almost all of the patients who received compounded medication received pain cream or scar cream that had the highest rates of reimbursement." (Id.). "[Z Stat Medical] designed prescription pads that Centurion and the sales representatives provided to patients to give to doctors that included compound medications that would be reimbursed." (Id.).

Smith allegedly "would discuss with Centurion the prescriptions that they should encourage doctors to prescribe because of the amount that insurance paid for them" and "provided advice . . . on how to encourage doctors to complete the prescriptions pads to increase the likelihood and the amount of reimbursement." (Id. at 18). "[T]he doctors were encouraged to sign prescriptions with unlimited refills in order to maximize revenue for [Z Stat Medical] and the marketers." (Id.). Also, Z Stat Medical "sometimes waived co-payments for prescriptions, in violation of TRICARE regulations and its own policies, in order to encourage

patients to continue accepting medications, including when patients expressed they did not want or need them." (Id.).

According to the Complaint in partial intervention, "Smith had conducted his own independent research into the anti-kickback laws." (Id. at 19). "Specifically, Smith was aware that no pharmacy could pay a commission per prescription to any marketing firm in connection with government funded insurance claims because it was illegal." (Id.). Smith allegedly "also understood this to be a norm in the pharmacy industry." (Id.). And Smith, Z Stat Medical, and Stat Direct "knew that compliance with the [Anti-Kickback Statute] was a material requirement for receiving TRICARE reimbursement." (Id. at 20).

"Only after the United States executed a search warrant that notified [Z Stat Medical] that the Government was aware of its improper conduct, [Z Stat Medical] paid more than $19 million to [the company that administers prescription drug coverage for TRICARE], which included all amounts received for claims submitted in connection with Centurion." (Id. at 21). Z Stat Medical "also reversed approximately $40 million in pending claims before they could be paid by TRICARE." (Id. at 22).

The United States additionally includes specific information about three false claims submitted by Z Stat Medical. (Id. at 21-22).

Smith, Z Stat Medical, and Stat Direct now move to dismiss the Complaint in partial intervention (Doc. # 76) as a shotgun complaint, for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b), and for failure to state a claim for violation of the FCA under Rule 12(b)(6). The United States has responded (Doc. # 86), and the Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Rule 9(b) of the Federal Rules of Civil Procedure imposes more stringent pleading requirements on claims alleging fraud. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1305 (11th Cir. 2002). The complaint must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009).

## III. **Analysis**

As a preliminary matter, the Court rejects the argument that the Complaint in partial intervention is a shotgun complaint. (Doc. # 76 at 12-14). Each count of the Complaint in partial intervention reincorporates all factual allegations. (Doc. # 39 at 22-23). This is permissible. See

_Weiland v. Palm Beach Cty. Sheriff's Office_, 792 F.3d 1313,
1324 (11th Cir. 2015)("[Plaintiff's] re-alleging of
paragraphs 1 through 49 [from the fact section] at the
beginning of each count looks, at first glance, like the most
common type of shotgun pleading. But it is not.").

However, Counts II and III also incorporate the
allegations from Count I. (_Id._). That is improper. _See_
_Weiland_, 792 F.3d at 1322-23 (describing a complaint that
"contain[s] multiple counts where each count adopts the
allegations of all preceding counts" as a shotgun complaint).
But there are only three paragraphs in Count I, and Smith, Z
Stat Medical, and Stat Direct have not identified any
prejudice caused by this pleading error. The Complaint in
partial intervention is not confusing and will not be
dismissed as a shotgun complaint.

The Court next addresses Smith, Z Stat Medical, and Stat
Direct's arguments for dismissal of each count separately.

## A. <u>Alleged Violation of Section 3729(a)(1)(A)</u>

The FCA may be enforced by the government or by a relator
through a qui tam action brought "in the name of the
Government." 31 U.S.C. § 3730(b). The FCA permits private
persons to file qui tam actions on behalf of the United States
against any person who "knowingly presents, or causes to be

presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

The key issue under Section 3729(a)(1)(A) is whether the defendant "presented or caused to be presented" a false claim. Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1052 (11th Cir. 2015)(quoting Hopper, 588 F.3d at 1325-26). To satisfy Rule 9(b), a complaint "must allege the actual presentment of a claim . . . with particularity, meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." Id. at 1052. A plaintiff may allege presentment of a claim by "[p]roviding exact billing data — name, date, amount, and services rendered — or attaching a representative sample claim." United States ex rel. Mastej v. Health Mgmt. Assocs., Inc., 591 F. App'x 693, 704 (11th Cir. 2014). "However, there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim." Id. (citing Clausen, 290 F.3d at 1312 & n.21). Rather, a complaint must contain "some indicia of reliability" that a false claim was actually submitted. Clausen, 290 F.3d at 1311.

Here, the United States alleges Smith, Z Stat Medical, and Stat Direct violated Section 3729(a)(1)(A) because they "knowingly made or presented, or caused to be made or

14

presented, to the United States claims for payment for compounded drugs for TRICARE patients that were tainted by kickbacks to marketers and patients and/or did not arise from a valid practitioner-patient relationship." (Doc. # 39 at 22).

"The federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits a person from paying or receiving kickbacks to induce the referral of an individual for services paid under a federal health care program." United States v. Choudhry, 262 F. Supp. 3d 1299, 1306 (M.D. Fla. 2017)(citing 42 U.S.C. § 1320a-7b(b)(1)-(2)). "In 2010, Congress amended the statute to specify that 'a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA].'" Id. (quoting 42 U.S.C. § 1320a-7b(g)).

Smith, Z Stat Medical, and Stat Direct first argue that the Complaint in partial intervention fails to allege fraud with particularity as to Smith. (Doc. # 76 at 5). They insist there are no allegations that Smith personally submitted false claims to the government. (Id.). According to them, "[t]he United States failed to particularly describe (or even allege) how [] Smith submitted a false claim. Instead, the United States alleges a scheme whereby [] Smith (the

individual) entered into agreements with Centurion and Health Savings Solutions . . . to pay a percentage of the revenue for prescriptions referred to [Z Stat Medical]." (Id. at 6).

Smith, Z Stat Medical, and Stat Direct also contend that the United States has not pled that Smith *knowingly* submitted a false claim. (Id. at 7). They insist that "the allegations in the Complaint contradict any argument that [] Smith would have knowingly submitted a false claim" because he had consulted with attorneys to draft agreements that would not violate federal law and actually entered a referral agreement promising that neither Smith's companies nor Roix's companies would violate federal law. (Id. at 7).

The Court disagrees and finds that the United States has pled Smith's role in the kickback schemes with particularity. The United States is correct that Smith can be held liable under the FCA if he caused the submission of false claims, even if he did not submit the claims himself. (Doc. # 86 at 12-13); see United States v. Berkeley Heartlab, Inc., 225 F. Supp. 3d 487, 499 (D.S.C. 2016)("Taking the allegations as true and applying the traditional tort principles of proximate causation, the Court finds that [the employer company defendants'] submission of false claims was the necessary, foreseeable, and obvious consequence of [the

corporate officer defendants'] participation in the abovementioned schemes."). The Complaint in partial intervention alleges with particularity how Smith caused false claims to be submitted to TRICARE — specifically, he allegedly negotiated the kickback schemes with Roix and Centurion. (Doc. # 39 at 11, 14). Smith also allegedly spoke with the marketers about what prescriptions should be issued to maximize the reimbursement rates from TRICARE. (Id. at 18).

Furthermore, scienter can be alleged generally. See Urquilla-Diaz, 780 F.3d at 1051 ("Rule 9(b) provides that a party alleging fraud 'must state with particularity the circumstances constituting fraud' but may allege scienter generally."). And the United States' allegations regarding Smith's scienter — that he knowingly entered the kickback schemes and knew kickbacks are illegal — are sufficient at this stage. The United States has clearly alleged that Smith knew that paying commissions per prescription to marketers regarding government-funded claims was illegal because of his research into anti-kickback statutes and his experience in the healthcare industry. (Doc. # 39 at 19).

Accepting all the allegations as true and drawing reasonable inferences in the United States' favor, the Court

can easily conclude that Smith's actions do not contradict the allegation that Smith knew his kickback arrangements were unlawful. The United States alleged that the agreement with Roix was a sham that no party ever intended to follow and that the alleged kickback scheme with Centurion continued unabated even while Smith consulted with lawyers without success about crafting a legal referral arrangement. (Id. at 12, 14).

As for the claim that Z Stat Medical violated the FCA, Smith, Z Stat Medical, and Stat Direct argue the claim should be dismissed because all Defendants are lumped together, making "it [] impossible to determine what allegations specifically relate to" Z Stat Medical. (Doc. # 76 at 9). And they contend that, "[b]y self-reporting and repaying TRICARE plus interest, [Z Stat Medical] cannot be liable for a violation of the FCA." (Id. at 10).

Where the pertinent allegations of fraud lump all defendants together without specific assertions about a defendant's conduct, Rule 9(b) requires dismissal of that defendant. See Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007)(stating that a complaint that is "devoid of specific allegations with respect to each

defendant" and "lump[s] together all of the defendants in
their allegations of fraud" should be dismissed).

Here, the Complaint in partial intervention sometimes
uses the collective term "Defendants" when describing the
alleged fraudulent conduct. But the United States has also
pled with particularity actions that Z Stat Medical
specifically undertook in violation of the FCA. For example,
the United States alleges that Z Stat Medical submitted
thousands of false claims to TRICARE under the kickback
schemes with both Centurion and Roix and then paid millions
in kickback commissions to those marketers. (Doc. # 39 at 12,
16). The Complaint in partial intervention also describes how
Z Stat Medical maintained spreadsheets outlining the
kickbacks due under each kickback scheme. (Id. at 11, 15-16).
The United States pled the dates and amounts of various
kickback payments paid through Z Stat Medical and the details
of some representative false claims. (Id. at 16, 21). Thus,
there are sufficient allegations about Z Stat Medical
individually to support the FCA claim.

The Court acknowledges that Z Stat Medical returned $19
million to TRICARE for moneys it received through its kickback
scheme with Centurion. (Id. at 21). But that does not absolve
Z Stat Medical of liability under the FCA for its submission

of false claims in the first place, and Z Stat Medical has not cited to any case law to that effect. The FCA allows for treble damages, 31 U.S.C. § 3729(a)(1), so Z Stat Medical is still potentially liable for significant damages. If Z Stat Medical is ultimately found liable, the Court will deduct the amount already paid to the United States from the trebled damages when the case concludes. See United States v. Entin, 750 F. Supp. 512, 519 (S.D. Fla. 1990)(stating that damages under the FCA should be tripled before any deductions for prior recoveries by the United States).

Finally, Smith, Z Stat Medical, and Stat Direct argue that the United States has failed to state a claim with particularity against Stat Direct. (Doc. # 76 at 8-9). They note that the only allegations about Stat Direct specifically are "the ones that describe the parties" and that "the United States simply lumps Stat Direct into the defined term 'Defendants,' and provides no particularity as to how Stat Direct violated the FCA." (Id.). Thus, they reason, the United States has failed to allege the who, what, where, when, and why of a false claim submitted by Stat Direct.

Again, dismissal of an FCA claim is proper under Rule 9(b) when a complaint is "devoid of specific allegations with respect to each defendant" and "lump[s] together all of the

20

defendants in [its] allegations of fraud." <u>Ambrosia Coal &</u>
<u>Const. Co.</u>, 482 F.3d at 1317; <u>see also United States v.</u>
<u>Corinthian Colleges</u>, 655 F.3d 984, 997–98 (9th Cir.
2011)("Rule 9(b) does not allow a complaint to merely lump
multiple defendants together but requires plaintiffs to
differentiate their allegations when suing more than one
defendant and inform each defendant separately of the
allegations surrounding his alleged participation in the
fraud." (citation omitted)).

The United States asks the Court to impute Smith's
fraudulent acts to Stat Direct. (Doc. # 86 at 16-17). It
argues that "[a] company is liable under the [FCA] if one of
its officers engages in activity that violates the statute."
(<u>Id.</u> at 17)(citing <u>United States v. O'Connell</u>, 890 F.2d 563,
569 (1st Cir. 1989)("We hold that a corporation should be
held liable under the False Claims Act for the fraud of an
agent who acts with apparent authority even if the corporation
received no benefit from the agent's fraud.")). According to
the United States, "when Smith personally entered into the
kickback arrangements with Centurion and Roix, he did so as
the President and owner of [Z Stat Medical] and while serving
as the manager of [Stat Direct, which] managed [Z Stat
Medical]." (<u>Id.</u>).

The Court agrees with Smith, Z Stat Medical, and Stat Direct. The allegation that Stat Direct was merely the managing company for Z Stat Medical and was also managed by Smith does not show that Stat Direct submitted or caused to be submitted false claims. See Choudhry, 2016 WL 7228760, at *3 ("[T]he Second Amended Complaint impermissibly lumps together all defendants, failing to allege what conduct each defendant engaged in. . . . Most Defendants are merely identified in passing and vaguely connected to the alleged kickback scheme."). That Stat Direct was associated with both Smith and Z Stat Medical does not support that Stat Direct was involved in the kickback schemes.

The Complaint in intervention nowhere alleges that Smith was acting on behalf of and within the scope of his employment with Stat Direct, as opposed to Z Stat Medical, when he entered into the kickback schemes. See Grand Union Co. v. United States, 696 F.2d 888, 891 (11th Cir. 1983)("We have held that in cases brought under the [FCA] that the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment."); see also United States v. Hill, 676 F. Supp. 1158, 1178 (N.D. Fla. 1987)("Binding precedent in this circuit clearly holds that, in cases brought under the [FCA],

an entity will not be held responsible for the acts of one of its employees unless the employee was acting within the scope of his authority and with the purpose of benefitting the entity."). And there are no allegations about actions Stat Direct engaged in as manager for Z Stat Medical.

Therefore, the Complaint in partial intervention fails to plead fraud with particularity as to Stat Direct. Count I is dismissed as to Stat Direct, but survives as to Smith and Z Stat Medical. If the United States wishes to amend its claim against Stat Direct, the United States may file an amended complaint in partial intervention by February 26, 2019.

### B. **Payment by Mistake**

In Count II, the United States asserts a claim for "payment by mistake": "This is a claim by the United States for the recovery of monies that TRICARE paid to [Z Stat Medical] by mistake for compounded drugs that were tainted by kickbacks to marketers and patients and/or did not arise from a valid practitioner-patient relationship." (Doc. # 39 at 22-23).

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." United States v. Halifax Hosp. Med. Ctr., No. 6:09-cv-1002-Orl-31TBS, 2013 WL 6017329, at *7 (M.D. Fla. Nov. 13,

2013). The United States may recover on a claim of payment by mistake if it shows that payments were made "under an erroneous belief which was material to the decision to pay." Id. (quoting United States v. Mead, 426 F.2d 118, 124 (9th Cir. 1970)). Under either a payment by mistake or unjust enrichment theory, "the Government may seek repayment from any third parties to whom the funds flowed, not just the party to which they were directly given." United States ex rel. Cairns v. D.S. Med. LLC, No. 1:12CV00004 AGF, 2015 WL 590325, at *5 (E.D. Mo. Feb. 11, 2015).

Smith, Z Stat Medical, and Stat Direct argue this claim should be dismissed because the claim was not pled in the alternative to the FCA claim. (Doc. # 76 at 11). They further argue the United States has failed to state a claim because "[t]he United States neither delineates which Defendant received the payments, nor which payments were made by mistake" and "does not differentiate between amounts paid to and retained by [Z Stat Medical] and amounts returned to TRICARE." (Id.). According to them, "[e]ven if this count were pled in the alternative, it is impossible for the Defendants to defend against the allegations without knowing who was at fault and which payments were made by mistake." (Id.).

In response, the United States notes that "a plaintiff is not required to state it is pleading causes of action in the alternative, and Defendants present no contrary authority." (Doc. # 86 at 18). The United States is correct. Indeed, "it is commonplace for the Government to plead common-law theories of payment by mistake and unjust enrichment contemporaneously with FCA claims," and "federal courts have routinely allowed common-law claims and FCA claims to coexist." United States v. Crumb, No. CV 15-0655-WS-N, 2016 WL 4480690, at *18 (S.D. Ala. Aug. 24, 2016). Therefore, the Court will not dismiss either the payment by mistake or unjust enrichment claims because the United States did not explicitly plead in the alternative.

Additionally, the United States contends that it does not have to "provide more detail about who currently controls the funds paid by mistake to [Z Stat Medical], an entity alleged to be led by Smith and managed by Stat Direct, which was in turn also managed by Smith." (Doc. # 86 at 18). It argues that the mistakenly-paid funds flowed through and benefited all Defendants and more details about who has the funds now are unnecessary at this stage. See D.S. Med. LLC, 2015 WL 590325, at *5 ("[T]he Government may seek repayment

from any third parties to whom the funds flowed, not just the party to which they were directly given.").

The Court agrees with the United States as to Smith and Z Stat Medical. The United States has stated a claim for payment by mistake against Smith and Z Stat Medical because it has alleged that it would not have paid the claims submitted by Z Stat Medical had it known of the kickback schemes in which Z Stat Medical and Smith were intimately involved. See D.S. Med. LLC, 2015 WL 590325, at *6 ("[T]he allegations that Medicare and Medicaid mistakenly paid claims under the belief that [Defendants] were in compliance with the law, and that but for this mistaken belief they would have denied the claims, are sufficient to survive a motion to dismiss."). Defendants' arguments seeking greater detail about specific mistakenly-made payments are better dealt with at summary judgment.

But there are insufficient allegations that payments were made by mistake to Stat Direct. There are no non-conclusory allegations that the mistakenly-paid funds flowed through Stat Direct. Therefore, the Motion is granted as to Stat Direct only. The United States may file an amended complaint in partial intervention to allege further facts about Stat Direct's involvement by February 26, 2019.

### C.  **Unjust Enrichment**

In Count III, the United States asserts a claim for unjust enrichment against Smith, Z Stat Medical, and Stat Direct. (Doc. # 39 at 23). "By virtue of the conduct and the acts described above, Defendants were unjustly enriched at the expense of the United States in an amount to be determined, which, under the circumstances, in equity and good conscience, should be returned to the United States." (Id.).

"To state a claim of unjust enrichment under federal common law, the Government must show that '(1) a benefit was conferred, (2) the recipient was aware that a benefit was received and; (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it.'"  D.S. Med. LLC, 2015 WL 590325, at *5 (citation omitted). As with the payment by mistake claim, "the Government may seek repayment from any third parties to whom the funds flowed, not just the party to which they were directly given." Id.

Smith, Z Stat Medical, and Stat Direct maintain that "the United States fails to allege what benefit was conferred on which defendant," and "there are no allegations that any benefit was conferred on Stat Direct" nor "any allegations

that [] Smith received payments through the government health care programs." (Doc. # 76 at 12). Furthermore, regarding Z Stat Medical, "the United States acknowledges that [Z Stat Medical] repaid over $19 million to TRICARE," so Z Stat Medical reasons, it "did not retain the benefit, and there can be no claim for unjust enrichment" for any claims associated with Centurion. (Id.).

The United States argues that it has sufficiently alleged that all Defendants "participated in and benefited from the schemes, even if the Complaint does not identify which Defendant entity currently controls the funds." (Doc. # 86 at 19). And while the United States acknowledges that Z Stat Medical repaid $19 million to TRICARE related to the Centurion scheme, there are no allegations that Z Stat Medical repaid all it received from its scheme with Roix. So, the United States has sufficiently alleged that Z Stat Medical was at least unjustly enriched by its scheme with Roix.

The United States has sufficiently alleged that Smith and Z Stat Medical received a benefit from the kickback-tainted claims paid by TRICARE. See United States v. Berkeley Heartlab, Inc., No. 9:14-230, 2017 WL 4803911, at *7-8 (D.S.C. Oct. 23, 2017)(denying defendants' motion for summary judgment as to payment by mistake and unjust enrichment claims

where there was evidence supporting allegations that the United States had "paid the claims at issue under the erroneous belief that . . . Defendants had not tainted the claims with kickbacks"). Yet, there are no allegations to establish that Stat Direct specifically received any benefit from the kickback schemes because there are no specific allegations about Stat Direct's involvement in the kickback schemes or its compensation by Z Stat Medical.

The Motion is denied for the unjust enrichment claim against Smith and Z Stat Medical but granted as to Stat Direct. Again, the United States may file an amended complaint in partial intervention by February 26, 2019.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Larry Smith, Stat Direct, LLC, and Z Stat Medical, LLC's Motion to Dismiss the United States of America's Complaint in Intervention (Doc. # 76) is **GRANTED IN PART AND DENIED IN PART.**

(2) All claims against Smith and Z Stat Medical survive. But all claims against Stat Direct, LLC, are **DISMISSED** with leave to amend by **February 26, 2019.**

(3) If the United States fails to file an amended complaint in partial intervention by that date, the case will

proceed as to the claims against Smith and Z Stat Medical alone.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of February, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE